■    LAUREN R. KK, Respondent, v DANIEL J. LL, Appellant.—Appeal from orders of the Family Court of Broome County, entered March 26, 1976 and April 12, 1976, respectively, which adjudged the appellant to be the father of a child born out of wedlock to the petitioner and directed him to support said child. Petitioner instituted this proceeding to establish that appellant fathered her child born out of wedlock on June 14, 1975. Following a hearing on the matter, the Family Court granted an order of filiation based almost entirely on petitioner's testimony and further ordered appellant to pay $15 per week for the support of the child. This appeal ensued. The sole question presented for our determination is whether petitioner has carried her burden of proof which requires that she establish appellant's paternity " 'to the point of entire satisfaction' " by clear and convincing evidence *(Matter of Renee G v William H,* 46 AD2d 823, affd 39 NY2d 812; *Matter of Gray v Rose,* 32 AD2d 994, 995). We hold that she has not carried this burden and that, therefore, the orders appealed from must be reversed. In so ruling, we would initially note the implausibility of petitioner's story as related through her testimony. She admits to becoming sexually active shortly after her 15th birthday when she entered into an intimate relationship of approximately four months duration. In December of 1973, she broke off this relationship upon meeting appellant and establishing a similar arrangement with him. Subsequently, in February, 1974, this relationship also ended because appellant discontinued the courtship, and we are then asked to believe that thereafter until the birth of her child in June, 1975 petitioner studiously avoided all sexual contact with any male other than the one fateful rendezvous with appellant in September, 1974, which allegedly resulted in the pregnancy in question here. The unlikelihood of such a story is enhanced by the circumstances surrounding the September meeting as detailed by petitioner. Although appellant had avoided her since February, she maintains that they got together at his request. Moreover, the alleged meeting supposedly occurred at the home of a woman whom appellant was planning to marry while the woman was working directly across the street in a drug store and appellant was baby-sitting with her children. Considerable additional doubt is cast upon this far from convincing testimony by a consideration of petitioner's questionable credibility. From the record it is clear that she often spoke falsely with little apparent hesitation, and she failed to notify appellant of her pregnancy (cf. *Hopkins v Mabee,* 36 AD2d 897). Also, during the course of said pregnancy, she was diagnosed as suffering from venereal disease most likely resulting from sexual intercourse in both December, 1974 and June, 1975, although she steadfastly denied all sexual contact during that period. Upon such a record as this, we can only conclude that there is an absence of clear and convincing evidence that appellant was the father of petitioner's child *(Matter of Piccola v*

*Hibbard,* 51 AD2d 674, affd 40 NY2d 1035). Accordingly, as noted above, the orders of the Family Court must be reversed. Orders reversed, on the law and the facts, and petition dismissed, without costs. Koreman, P. J., Sweeney and Main, JJ., concur; Greenblott and Herlihy, JJ., dissent and vote to affirm in the following memorandum by Herlihy, J. The majority do not dispute that factually the record contains probative evidence of paternity, however, they would dismiss the petition because, *as a matter of law,* the evidence was not clear and convincing "to the point of entire satisfaction". While the rule of law is invoked, it is clear from the majority opinion that what is being questioned is the credibility of the petitioner and in this regard it must be noted that we did not observe her while she testified, as did the Family Court Judge. The Family Court found that the testimony of the petitioner was corroborated in at least two very important aspects. The first such aspect was that the early 1974 boyfriend-girlfriend relationship between the then 15-year-old petitioner and the older appellant was established by independent witnesses. In this regard, the appellant's mistress testified that she temporarily stopped living with her and her children in January of 1974 and there was a girl named "Laurie" involved, and the appellant's brother confirmed a relationship that at least involved kissing between the petitioner and appellant in early 1974. The appellant did not testify and it would be incredible to doubt the petitioner's testimony of intimacy between them in January and February of 1974 (2 Schatkin, Disputed Paternity Proceedings [4th ed, rev], § 24.35). The petitioner alleged that on a Sunday in September of 1974 she and the appellant had sexual intercourse at his home on Oakdale Road and that the children of appellant's mistress were present at the premises at that time. The appellant through the testimony of his mistress, established that appellant was living at Oakdale Road at the time in question and that he would have been baby-sitting with her children on Sundays in September of 1974. The Family Court noted that the petitioner described the interior of the house in detail and that *no one* disputed her description. The appellant did not deny that she was ever present in the house or offer any explanation of her familiarity with the residence. The petitioner in response to a question did affirm that on one occasion her girl friend told her that she (the girl friend) had been present in the appellant's residence. However, the petitioner was *not* asked if the girl friend had described the residence and although the girl friend also testified as a witness *for the appellant,* the girl friend was not asked in this regard. This record supports a finding by the Family Court that the petitioner was in the residence. The majority would find it *unlikely* that the petitioner had no sexual contact with anyone except appellant from the end of February until the alleged September rendezvous, apparently because she was "promiscuous". The record establishes that this young girl had indulged in sexual relations with two males, appellant and one other person. There is no other evidence of "promiscuity". The same evidence also establishes that as to both of the males with whom she had indulged in sexual relationships, they were boyfriends as opposed to casual acquaintances. The record contains no evidence of another boyfriend after the appellant admittedly stopped seeing her at the end of February, 1974. Indeed, the appellant's brother testified that to his personal knowledge the petitioner continued to attempt to get in touch with the appellant after the appellant stopped seeing her. If the petitioner remained enamoured of the appellant, it is not unlikely that she would rendezvous with him in September of 1974 and given their prior intimacies, the occurrence of sexual intercourse at that time would not be unusual. While this record demonstrates unusual behav-

ior on the part of the appellant as to using the residence of his mistress for the September, 1974 occurrence, it is consistent with his thoroughly established earlier conduct with this young petitioner. On issues of credibility the majority find a venereal disease was established as a condition of petitioner during her pregnancy. It must be noted that the Family Court found that the expert evidence was not of such a quality as to establish a disease resulting from sexual intercourse. A reading of the record clearly supports that finding of the Family Court on that issue and the majority's position herein would render the function of the Family Court as "trier of the fact" meaningless. As a matter of law, the evidence was of such a nature that the Family Court could find it clear and convincing. It is remarkable that a putative father who so clearly has contributed to the alleged moral corruption of this infant petitioner should argue that because of such conduct her testimony is incredible. The majority's observation that the petitioner "often spoke falsely with little apparent hesitation" is without any substantial objective support in the record and contrary to the opinion of the majority, as found by the Family Court, the petitioner did cause the appellant to be aware of the pregnancy, albeit she did this indirectly as is established by the testimony of the appellant's mistress. Under such circumstances, the issue of credibility was for the trier of the fact (see *Matter of Jay v Andrew Y,* 48 AD2d 716). The orders should be affirmed.